## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ELIZABETH A. SEYEDOFF,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. CIV-07-1054-M** |
| **vs.** | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF THE SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Elizabeth A. Seyedoff ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act.  This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings by filing her application seeking disability insurance benefits in January, 2005, alleging that diabetes, heart disease, an irregular heart beat, and high blood pressure became disabling as of May 31, 1999 [Tr. 46 and 65]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 34 - 36 and 39 - 42]; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted an August, 2006 hearing where Plaintiff, who was represented by counsel, testified [Tr. 33 and 212 - 233].

In his November, 2006 decision the ALJ found that Plaintiff retained the capacity to perform her past relevant work as a file clerk and as a cashier and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 15 - 21].  The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 4 - 7], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

## Standard of Review

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted).  Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial.  "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion."  *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.* at 299.

## Determination of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C.§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## Plaintiff's Claims of Error

Plaintiff maintains that the decision in this matter is erroneous because neither "of the past jobs to which the ALJ found [Plaintiff] able to return qualifies as past relevant work under the Commissioner's regulations, and because the record lacks evidence to show that with her residual functional capacity as found by the ALJ, [Plaintiff] could have met the actual working demands of either such job." [Doc. No. 21, p. 3]. Plaintiff also alleges that the ALJ did not consider all of her medically determinable impairments in formulating her residual functional capacity ("RFC"),[1] and that the ALJ committed additional error in his assessment of Plaintiff's credibility. *Id.*

---

[1]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

**Analysis**

The ALJ's initial finding in this matter is that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2004 [Tr. 17]; he further noted that much of the medical evidence of record pertains to a January, 2005 transient ischemic attack, or TIA, suffered by Plaintiff and, thus, falls after the date last insured [Tr. 20].[2] His finding that Plaintiff must demonstrate that she was under a disability on or before March 31, 2004, in order to be entitled to disability insurance benefits, *id.,* is not contested on appeal.

**Plaintiff's Past Relevant Work**

Plaintiff's first challenge is to the ALJ's finding that she retained the ability to perform her past relevant work as a file clerk and a cashier through her date last insured [Tr. 20; Doc. No. 21, pp. 14 - 15].  The Commissioner concedes Plaintiff's argument [Doc. No. 21, pp. 14 - 15] that her former work as a file clerk was performed more than fifteen years before her insured status expired and, consequently, was mischaracterized by the ALJ as past relevant work [Doc. No. 23, p. 11].  According to the Commissioner, however, this error was harmless because the ALJ properly concluded that Plaintiff could perform her past work as a cashier.  *Id.* at 11 - 12.

In connection with her position as a cashier, Plaintiff argues that for past work to have vocational relevance, "the worker must have performed the work for the SVP (specific

---

[2]Plaintiff was in a wheelchair at the time of her administrative hearing; she testified that she did not begin using the chair until January, 2005 after suffering a mild stroke [Tr. 226].  Plaintiff further testified that weakness on her left side prevented her from walking. *Id.*

vocational preparation) time associated with that work in order for it to count as relevant past work." [Doc. No. 21, p. 14].  She maintains that she worked as a cashier in a convenience store for four months, from April to August, 1992 [Doc. No. 21, p. 14; Tr. 73], but that "the record simply doesn't tell us whether or not she was working at that [cashier] job long enough to meet it's [sic] SVP time, as we don't know what that SVP time is." [Doc. No. 21, p. 15].  The Commissioner counters that the ALJ specifically referenced the *Dictionary of Occupational Titles* ("DOT") as his source for the requirements for the job of cashier [Doc. No. 23, p, 12; Tr. 20] and that the DOT establishes that the job of store cashier – DICOT 211.462-010, 1991 WL 671840[3] – has an SVP of Level 2.  A job at this level requires "[a]nything beyond [a] short demonstration up to and including 1 month" to learn, *id.*, and, accordingly, the Commissioner correctly maintains that the four months Plaintiff worked at this job was sufficient for her to learn it.  The ALJ committed no error in this regard.

Plaintiff's second point of error also relates to her past relevant work and her claim "that there is no evidence of record showing that, with her residual functional capacity as found by the ALJ, [Plaintiff] would in fact have been able to perform either of the two past jobs cited by the ALJ." [Doc. No. 21, p. 15].  In support of her argument, Plaintiff asserts that the ALJ found that she was limited to lifting no more than twenty pounds [Tr. 18] but that "her description of the employment as a cashier indicated that this work required her to lift

---

[3]Plaintiff did not exercise her option to file a reply brief in this matter [Doc. No. 14], and, accordingly, did not take issue with the Commissioner's characterization of her past work as a "store cashier" under the DOT.

up to fifty pounds." [Doc. No. 21, p. 15; Tr. 75). Once again, however, as the Commissioner accurately contends, at step four the "claimant bears the burden of proving [her] inability to return to [her] particular former job and to [her] former occupation as that occupation is generally performed throughout the national economy." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993). The ALJ specifically determined that Plaintiff was able to perform the cashier position "as generally performed in the national economy." [Tr. 20 - 21]. Because the DOT establishes that the position of store cashier requires lifting no more than twenty pounds, *see* DICOT 211.462-010, 1991 WL 671840, the ALJ did not error in concluding that Plaintiff retained the ability to perform her past work as a store cashier as that work is generally performed in the national economy.

### Plaintiff's Medically Determinable Impairments

As her third contention of error, Plaintiff makes several claims with regard to the ALJ's treatment of her medically determinable impairments, noting initially that the ALJ's decision reflects that through her date last insured, she suffered from type II diabetes mellitus, hypertension, and morbid obesity [Doc. No. 21, p. 16; Tr. 17]. She claims that the decision did not consider these impairments along with other medically determinable impairments including atrial fibrillation, arthropathy, and diabetic neuropathy. The Commissioner, while not disputing the obligation to consider the combined effect of all

impairments,[4] argues that Plaintiff's atrial fibrillation diagnosis[5] – which Plaintiff acknowledges was referenced by the ALJ [Doc. No. 21, p. 17; Tr. 20] – was made without any finding of a corresponding effect or functional limitation [Tr. 159]. Instead, Plaintiff was placed on aspirin therapy, scheduled for a recheck, and advised to call with any complications. *Id.* The ALJ committed no error with regard to his treatment of Plaintiff's atrial fibrillation. There is no evidence of record from any medical source that this impairment, singly or in combination with other impairments, limited or effected Plaintiff's ability – prior to her date-last-insured – to function.

As to Plaintiff's argument that the ALJ also failed to account for her diagnosed diabetic arthropathy and neuropathy [Doc. No. 21, p. 17], the Commissioner responds – accurately – that this diagnosis was not made until after the expiration of Plaintiff's date last insured [Doc. No. 23, p. 9; Tr. 112 and 115]. Moreover, as the Commissioner further argues, no records of the diagnosing physician indicate "the presence of any functional limitations resulting from this condition before [Plaintiff's] insured status expired, and Plaintiff fails to identify any other records that provide such evidence." [Doc. No. 23, p. 9].

Finally, Plaintiff contends that evidence which was not before the ALJ but was, instead, submitted to the Appeals Council "shows long-standing arthritic damage to

---

[4]*See* 20 C.F.R. § 404.1523.

[5]This diagnosis was made by Plaintiff's treating physician, Dr. Lo, in December, 2003 and, thus, was made four months prior to Plaintiff's date last insured [Tr. 159]. The diagnosis does not appear to have been rendered as a result of any functional concern by Plaintiff whose chief complaint that date was of allergies. *Id.*

[Plaintiff's] right wrist (Tr. 210) and right knee (Tr. 211)[.]" [Doc. No. 21, p. 17].  Plaintiff maintains that, "It is self-evident that proper consideration of the evidence showing lower extremity arthropathy and arthritis in the right knee, in particular, could have lent greater credence than was given in the decision to [Plaintiff's] reported difficulties in walking or standing for more than brief intervals."  *Id.*  The Commissioner maintains that the Appeals Council adequately considered the new evidence submitted to it and correctly determined that such evidence "does not provide a basis for changing the Administrative Law judge's decision." [Tr. 5; Doc. No. 23, p. 10].  Nonetheless, the Commissioner acknowledges that the new evidence is now a part of the administrative record which this court must consider in its review on appeal [Doc. No. 23, p. 10].

In connection with the new evidence – x-ray reports of "very minimal osteoarthritic change" in Plaintiff's right wrist in 1988 [Tr. 210] and findings consistent with degenerative joint disease in her right knee in 1992 [Tr. 211] – the Commissioner argues that despite these findings, Plaintiff was able to perform work requiring significant exertion [Tr. 73 - 77].  And, the argument continues, even if her arthritic impairment remained through the period under review, there is no objective evidence establishing that the impairments caused greater limitations than they caused when she was working [Doc. No. 23, pp. 10 - 11].  Thus, the Commissioner asserts that the evidence of right wrist difficulties and right knee degenerative joint disease presented to the Appeals Council does not overwhelm the evidence relied upon by the ALJ in formulating Plaintiff's RFC.

Moreover, as to Plaintiff's specific argument that evidence of arthritis in Plaintiff's right knee "could have lent greater credence than was given in the decision to [Plaintiff's] reported difficulties in walking and standing for more than brief intervals[,]" [Doc. No. 21, p. 17], Plaintiff testified that she quit working because of swelling in her ankles and in her "right leg in the calf area." [Tr. 223]. And, while she testified that she had "arthritis in my knees[,]" *id.,* she further testified that the reason she had "a hard time sometimes walking long distances . . or stand[ing] on my feet for a long period of time" was because of arthritis in her hips that she believed was also in her lower back [Tr. 224, 227, and 231]. The same 1992 x-ray report that revealed the degenerative difficulties in Plaintiff's right knee, however, showed no significant abnormalities in her right hip [Tr. 211]. No error was committed by the Appeals Council in its consideration of the new evidence proffered by Plaintiff.

**<u>Plaintiff's Credibility</u>**

In her final claim of error, Plaintiff alleges that the ALJ's assessment of Plaintiff's credibility is deficient "most particularly as regards her reported limits in walking and standing, and her reported need to frequently elevate her feet during the day, prior to her date last insured." [Doc. No. 21, p. 18]. In this regard, a review of the ALJ's decision establishes that the ALJ specifically considered Plaintiff's testimony at the administrative hearing regarding her subjective complaints:

> The claimant was in a wheelchair and stated that she started using it in January 2005 when she had a mild stroke. She testified that she weighs between 320 and 350 pounds. She testified that swelling in her legs and ankles prevented

her from working.  She also has swelling in her knees, feet and hands.  She testified that she has to keep her legs elevated due to right leg and ankle swelling.  She testified she was diagnosed with diabetes and was placed on medications.  She stated she has arthritis in her knees and hips.  She testified she fell in December 1992, injured her hip and sciatic nerve and could not walk.  She testified she was able to stand some in March 2004.  Her knees would pop.  She sometimes used a cane and a walker.

[Tr. 18 - 19].  Then, following his review and consideration of the objective medical evidence of record, the ALJ recognized that Plaintiff had established the existence of impairments which "could have been reasonably expected to produce the alleged symptoms" [Tr. 20]; he determined, however, "that the claimant's statements concerning the intensity, persistence  and limiting effects of these symptoms are not entirely credible." *Id.*  Thus, the ALJ, as required, considered Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d them]."  *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted).  In making this determination, an ALJ should consider factors such as:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

Here, the ALJ focused on the objective medical evidence of record, the effectiveness of Plaintiff's medications, and her frequency of medical contacts:

The medical evidence shows that [Plaintiff] was treated for diabetes mellitus and hypertension on a sporadic basis from May 31, 1999, her alleged onset

date, through March 31, 2004.[6]  She responded well to her medications and she reported she had no side effects from these.  These impairments did not preclude her from being able to perform light work.  She was first noted to have atrial fibrillation on December 5, 2003 by Dr. Lo, but she did not see her physician again until after she suffered the TIA in January 2005.  This lack of medical treatment is not indicative of a severe and incapacitating condition during this time period.  It was not until she suffered a TIA in January 2005 and became wheelchair bound that she was unable to perform light work.

[Tr. 20].

Plaintiff argues that "[t]he problem with [the ALJ's] reasoning is, it simply doesn't address [Plaintiff's] actual complaints in any meaningful way, but instead merely states the conclusion that she was not disabled." [Doc. No. 21, p. 20].   In connection with Plaintiff's specific complaints regarding her alleged limitations in walking and standing and in her alleged need to frequently elevate her feet during the day due to swelling,[7] Plaintiff testified that she quit working because of swelling in her legs and ankles [Tr. 223][8] and arthritis in her knees and hips [Tr. 227].[9] The objective evidence reviewed by the ALJ [Tr. 19] shows that in October, 1998 Plaintiff's treating physician, Dr. Lo, noted "mild swelling" in both lower

_____

[6]Again, March 31, 2004 is the date Plaintiff was last insured for disability benefits [Tr. 20].

[7]In her Disability Report filed at the inception of the Social Security claim's process, Plaintiff stated that her illnesses – diabetes, heart disease, irregular heartbeat, high blood pressure – limited her ability to work as of May, 1999 because "[I] tire out too easily, legs & feet swell, unable to walk very far w/o tiring out." [Tr. 65].

[8]Plaintiff further testified that her doctor advised her to keep her legs elevated when sitting [Tr. 223]; Plaintiff has not directed the court to any objective evidence in support of this contention.

[9]Plaintiff's evidence in this regard was previously addressed in connection with her claim that such evidence was not properly considered by the Appeals Council.

extremities, diagnosed edema of the lower extremities, and prescribed a medication for swelling, as needed [Tr. 170].  When Plaintiff returned in December, 1998, Dr. Lo noted that she was taking medication for swelling and that, on examination, she had no extremity swelling [Tr. 169].  Once again, in March, 2001 when Dr. Lo noted that Plaintiff had experienced symptoms of diabetes for the past six months, no swelling was found on examination [Tr. 168].  Plaintiff was next seen in April, 2001 and her diabetes was improved, and no swelling was noted [Tr. 167]; these findings were repeated in May, 2001 [Tr. 165].

At her May, 2001 examination, Plaintiff was directed to return for a recheck in two months.  *Id.*  In March, 2002 Plaintiff returned to Dr. Lo's clinic complaining of a sinus problem and stating that she had forgotten to return for her recheck [Tr. 164].  Extremity swelling bilaterally was noted, and medication for this problem was prescribed.  *Id.*  This problem was corrected, and no swelling was noted at Plaintiff's subsequent appointments through December, 2003 [Tr. 159, 161,[10] 162, and 163].  As the ALJ's decision further reflects [Tr. 19], Plaintiff was seen by an endocrinologist several months after the expiration of her insured status; Plaintiff reported no problems with her feet or with leg edema, complaining instead of  swollen ankles and occasional problems with leg cramps and knee pain due to arthritis [Tr. 19 and 114].

The foregoing review demonstrates that Plaintiff's subjective description of her symptoms during the time period before her insured status expired and before her stroke –

_____

[10]At this examination in September, 2003 Plaintiff was instructed "to increase her exercise activity." [Tr. 161].

disabling swelling of her extremities requiring elevation of her legs [Tr. 223 and 230], decreased ability to sit and/or stand [Tr. 227], the need to use a walker and a cane [Tr. 231] – is not compatible with the objective evidence considered by the ALJ and noted in his credibility assessment.  There is simply no objective evidence from any medical source that Plaintiff suffered from disabling functional limitations prior to the expiration of her insured status.

As to Plaintiff's remaining claim regarding the validity of the ALJ's credibility assessment [Doc. No. 21, p. 21], the ALJ did not error in finding that Plaintiff was less than credible due to her lack of medical treatment [Tr. 20].  Among the factors an ALJ is directed to consider in assessing credibility is the frequency of a claimant's medical contacts.  *See Hargis,* 945 F.2d at 1489.  In this connection, the ALJ specifically found that while Plaintiff's treating physician first noted atrial fibrillation in December, 2003, Plaintiff did not return to Dr. Lo until after suffering a TIA in January, 2005 [Tr. 20].  The ALJ concluded that, "This lack of medical treatment is not indicative of a severe and incapacitating condition during this time period." *Id.*  Relying upon Social Security Ruling 96-7p, 1996 WL 374186, at * 7 (1996)  and its requirement that an adjudicator not draw inferences from a claimant's failure to seek medical treatment without first considering any explanation for such failure, Plaintiff argues that "the record shows that [Plaintiff] had told Dr. Lo that a change in her husband's employment had left her without health insurance, and that this was why she had not been back to see him in nearly a year." [Doc. No. 21, p. 22].  As the Commissioner correctly responds, however, this occurred nine months before  Dr. Lo diagnosed atrial

fibrillation, and "[n]othing in the record suggests that she did not have insurance at the time of this diagnosis." [Doc. No. 23, p. 7].  In fact, the record shows that Plaintiff sought access to other medical treatment during the time period identified by the ALJ [Tr. 107 - 116].

The ALJ's conclusion – that Plaintiff's subjective complaints are not entirely credible – is well supported by substantial evidence.  An ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  The ALJ properly and sufficiently explained the required link between the evidence of record and his finding that Plaintiff's allegations were not entirely credible, and his  assessment of Plaintiff's credibility is legally sound. No error was committed by the ALJ in his assessment of Plaintiff's credibility.

### RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed.  The parties are advised of their right to object to this Report and Recommendation by December 24, 2008,  in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 4th day of December, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE